**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-30625.

Anthony OJO, Plaintiff-Appellant,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Defendant-Appellee.

March 4, 1997.

Appeal from the United States District Court for the Western District of Louisiana.

Before REYNALDO G. GARZA, SMITH and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Anthony Ojo appeals the dismissal, as frivolous, of his petition for writ of habeas corpus. We affirm.

I.

Ojo's journey through the immigration and criminal justice systems began in 1982 when he, a citizen of Nigeria, entered the United States on a student visa. Ten years later, in May 1992, he was convicted in New York federal court of importation of heroin and possession of heroin with intent to distribute. The court sentenced him to five years' imprisonment and a three-year term of supervised release, and the conviction was affirmed. *See United States v. Ojo,* 992 F.2d 319(2d Cir.1993).

During the time Ojo was imprisoned on these charges, he filed three petitions for writ of habeas corpus under 28 U.S.C. § 2255,

all of which were denied.[1]  In December 1995, Ojo was released from prison into the custody of the Immigration and Naturalization Service ("INS"), which immediately initiated deportation proceedings against him.  In separate hearings in January and February 1996, the INS variously determined that he be held on $15,000 bond and that he be deported to Nigeria.  Ojo's appeals of these decisions are pending before the Board of Immigration Appeals.

In December 1995, Ojo filed the instant suit *pro se* and *in forma pauperis* ("IFP") in the court *a quo,* in which district Ojo was and is confined.  The magistrate judge, recognizing that the gravamen of Ojo's complaint was a collateral attack on the conviction that forms the basis for his deportation, generously construed the complaint as a habeas petition under 28 U.S.C. § 2241.[2]  The district court adopted the magistrate judge's construction and, on April 29, 1996, dismissed the petition with prejudice for both frivolousness and failure to exhaust administrative remedies.

II.

We must decide whether 28 U.S.C. § 2253, as recently amended by the Anti-Terrorism and Effective Death Penalty Act of 1996

---

[1]*See Ojo v. United States,* 993 F.2d 1532 (2d Cir.), *cert. denied,* 510 U.S. 890, 114 S.Ct. 247, 126 L.Ed.2d 200 (1993); *United States v. Ojo,* 22 F.3d 1091 (2d Cir.1994); *Ojo v. United States,* 40 F.3d 1237 (2d Cir.1994).

[2]Although Ojo has completed his prison term, he is within his three-year term of supervised release and thus remains "in custody" for purposes of habeas relief. *See Jones v. Cunningham,* 371 U.S. 236, 241-43, 83 S.Ct. 373, 376-77, 9 L.Ed.2d 285 (1963).

("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), requires that Ojo receive a certificate of appealability ("COA") before we may hear his appeal.[3] The new § 2253(c)(1) provides in relevant part:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or
>>
>> (B) the final order in a proceeding under section 2255.

Our task of interpreting a statute begins with an examination of its plain language. *United Servs. Auto. Ass'n v. Perry,* 102 F.3d 144, 146 (5th Cir.1996);  *White v. INS,* 75 F.3d 213, 215 (5th Cir.1996).  By its terms, § 2253 requires COA's only for appeals in habeas proceedings involving process issued by a state court (i.e., proceedings under 28 U.S.C. § 2254) and appeals from final orders in proceedings under § 2255.  Conspicuously absent from the statute is any mention of appeals in § 2241 proceedings.

As the plain language of § 2253 unambiguously indicates that a COA is not required in such cases, we need look no further.  *See United States v. Ron Pair Enters.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (holding that when a statute's language is plain, "the inquiry should end").  This conclusion brings us into agreement with the only other court of appeals to have considered this issue in a published opinion.  *See Bradshaw v.*

---

[3]In light of the fact that the AEDPA became effective on April 24, 1996—five days before the district court dismissed Ojo's petition—this case does not present any issues regarding retroactive application of the COA requirement. *Cf. Brown v. Cain,* 104 F.3d 744, 749 (5th Cir.1997) (holding that the AEDPA's COA requirement does not apply to petitioners who held certificates of probable cause on the act's effective date).

*Story,* 86 F.3d 164, 166 (10th Cir.1996).[4]

### III.

Because Ojo is proceeding IFP, we must consider whether the filing fee provisions of the Prison Litigation Reform Act ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321 (1996), apply.[5] Our inquiry begins with the question of whether Ojo is a "prisoner" under the newly-enacted 28 U.S.C. § 1915(h), which provides:

> As used in this section, the term "prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

As our research has failed to disclose any cases interpreting § 1915(h) in any federal court, we address this as a matter of first impression.

Whether Ojo falls within this definition of "prisoner" is a fairly close question. He is detained in a federal facility, and he certainly has been "convicted of" and "sentenced for" a crime. In some sense, it is his violations of criminal law that have

---

[4]Two courts have suggested that a COA might not be required in this situation. *See Gay v. Warden, FCI Estill,* No. 96-6048, 98 F.3d 1334, 1996 WL 570792, at *1 (4th Cir. Oct. 3, 1996) (unpublished) ("We accordingly deny a certificate of appealability to the extent that one is required and dismiss the appeal."); *Jaksic v. Reish,* No. 95 CIV. 8837 (PKL), 1996 WL 591244, at *1 (S.D.N.Y. Oct. 11, 1996) (unpublished) (adopting magistrate judge's recommendation that COA be denied). Neither of these decisions offers any analysis of the issue. We consequently elect to follow the approach mandated by the language of § 2253.

[5]As with the AEDPA, the PLRA became effective shortly before the district court dismissed Ojo's petition, and we therefore need not address any issues of retroactivity. *Cf. Adepegba v. Hammons,* 103 F.3d 383, 386 (5th Cir.1996) (holding that the PLRA's "three strikes" provision applies retroactively to appeals that were pending on its effective date).

caused his current detention, for if he had not been convicted of the drug offenses there would be no cause to deport him.

Strictly speaking, however, Ojo's present detention is for a violation of immigration law rather than criminal law. Nothing in the language of § 1915(h) suggests that Congress meant it to apply to INS detainees; indeed, the absence of immigration regulations from the laundry list of other things one might violate—parole, probation, and the like—very plausibly could be read to indicate the contrary. Had Congress wished to include immigration violations in this provision, it easily could have said so.

Our examination of the relationship between the PLRA and two other recent pieces of legislation confirms this view. In *United States v. Cole,* 101 F.3d 1076, 1077 (5th Cir.1996), we considered whether the PLRA's filing fee provisions, which do not specifically mention habeas actions, apply to petitions under § 2255.[6] We concluded that they do not, reasoning in part that Congress's substantial amendment of § 2255 through the AEDPA indicates that the AEDPA, not the PLRA, was meant as the primary mechanism for § 2255 reform.

This case presents a similar situation to that in *Cole,* both in the absence of any explicit reference to immigration violations in § 1915(h) and in the relationship of the PLRA to other congressional enactments. Whereas the PLRA makes no specific reference to litigation by pending deportees, the AEDPA and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996

---

[6]*Cole* did not address the applicability of the PLRA to § 2241 petitions.

("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009 (1996), address such matters directly.

The AEDPA, for example, amended 8 U.S.C. § 1105a(a)(10) to read:

> Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), [or] (D) ... shall not be subject to review by any court.

AEDPA § 440(a), 110 Stat. at 1276-77. The new § 1105a(a)(10) was short-lived, however, for less than six months later, the IIRIRA repealed it and substituted a similar provision codified at 8 U.S.C. § 1252(a)(2)(C):

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2)....

IIRIRA § 306(a), 110 Stat. at 3009-1667 to 3009-1668.

The statute referred to, 8 U.S.C. § 1182(a)(2)(A)(i)(II), provides that aliens who commit drug offenses—Ojo being a prime example—are deportable. Thus, under the current statutory scheme, an alien who has been ordered deported for drug offenses simply may not litigate the legality of a final deportation order in federal court.

When combined with the absence of any reference to immigration violations in the PLRA's definition of "prisoner," the fact that Congress addressed immigration reform in the AEDPA and IIRIRA, but not in the PLRA, is sufficient to convince us that the PLRA does not bring alien detainees within its sweep. As Ojo is not a "prisoner" within the meaning of the PLRA, its fee provisions do not apply to his petition.

IV.

Ojo's complaint alleged numerous trial errors that resulted in his convictions, including the government's failure to turn over exculpatory evidence, ineffective assistance of counsel, and insufficient evidence. Although the complaint was not originally styled as a § 2241 petition, the magistrate judge construed it as such, and Ojo has adopted that position on appeal.

The problem, however, is that 28 U.S.C. § 2255, not § 2241, is the proper means of attacking errors that occurred during or before sentencing. *Cox v. Warden, Fed. Detention Ctr.,* 911 F.2d 1111, 1113 (5th Cir.1990). Because all the errors Ojo alleges are of this ilk, they must be addressed in a § 2255 petition, and the only court with jurisdiction to hear that is the court that sentenced him, i.e., the New York federal court. *See Solsona v. Warden, F.C.I.,* 821 F.2d 1129, 1132 (5th Cir.1987).

Section 2241, by contrast, is the proper vehicle used to attack the manner in which a sentence is being executed. *United States v. Cleto,* 956 F.2d 83, 84 (5th Cir.1992). Although a § 2241 petition attacking matters within the province of § 2255 should be construed as a § 2255 petition, *see Solsona,* 821 F.2d at 1131-32, a court without jurisdiction to hear a § 2255 petition can hardly be expected to do that. As a § 2241 petition, Ojo's complaint is thoroughly frivolous.

The judgment of dismissal is AFFIRMED.