United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 3, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-10419

JOSEPH E JACKSON

Plaintiff - Appellant

v.

GARY JOHNSON, Director, Texas Department of Criminal
Justice; VICKI HALLMAN, Regional Director, Parole
Division; MIKE MILES, Facility Administrator,
Correctional Services Corporation; LEO HANSEN,
Case Manager, Correctional Services Corporation

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas, Fort Worth
No. 4:04-CV-183-A

Before KING, HIGGINBOTHAM, and SMITH, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Joseph E. Jackson, a mandatory
supervisee of the Pardons and Paroles Division of the Texas
Department of Criminal Justice, who resides at a privately
operated halfway house, seeks to appeal the district court's
judgment dismissing his action on the basis that he is a prisoner
who has accumulated three strikes under the Prisoner Litigation
Reform Act. Specifically, he requests leave to proceed in forma
pauperis on appeal. Jackson contends that he is not a

"prisoner," as that term is defined by the Prisoner Litigation Reform Act, and that he therefore should have been granted leave to proceed in forma pauperis in the district court. For the reasons that follow, we DENY Jackson's motion to proceed in forma pauperis on appeal and dismiss the appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-appellant Joseph E. Jackson avers that he was imprisoned pursuant to an April 1989 conviction and that he was released from prison to mandatory supervision[1] on November 12, 2003. Jackson now resides at a Fort Worth, Texas halfway house operated by the Correctional Services Corporation, a privately owned vendor under contract with the state of Texas. His residence at the halfway house appears to be a condition of his mandatory supervision.[2] Jackson states that he is locked up in

---

[1] Mandatory supervision is "the release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." TEX. GOV'T CODE ANN. § 508.001(5) (Vernon 1998). With certain exceptions, Texas law requires "the release of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced." Id. § 508.147(a). Parole, by contrast, is discretionary. Coleman v. Dretke, 395 F.3d 216, 219 n.1 (5th Cir. 2004). But once an inmate is released to mandatory supervision, he is considered to be on parole. TEX. GOV'T CODE ANN. § 508.147(b); Coleman, 395 F.3d at 219 n.1.

[2] Jackson asserts that he resides at the halfway house because, "[u]pon mandated release, . . . the State could not legally keep [him] incarcerated but also could not legally parole him to sleep on the streets." He says he was therefore "allowed to temporarily reside at a halfway house until such time as he

the facility 16 to 24 hours per day and is prohibited from leaving the facility except to go to or to search for employment.

Jackson brought this action under 42 U.S.C. §§ 1983 and 1985. He complains that while residing in the halfway house his access to the courts has been diminished in violation of the First and Fourteenth Amendments. He also complains that his treatment differs from that of other mandatory supervisees; he asserts that his release from prison was mandatory and that he therefore is entitled to the same liberties afforded mandatory

---

could acquire a place of his own or find a relative with whom to reside." But the Texas Attorney General filed an amicus curiae brief in which he avers that Jackson must reside at the halfway house as a condition of his release. Jackson's mandatory-supervision certificate is not part of the record, and we therefore do not know exactly what conditions were imposed on him during the term of his mandatory supervision.

For purposes of this appeal, however, we may presume that the reason Jackson resides at the halfway house is that his residence there is a condition of his mandatory supervision since Jackson filed a § 1983 action rather than a habeas petition. A prisoner may file a § 1983 action to challenge the conditions of confinement, whereas a challenge to the fact of confinement is properly presented in a habeas petition. Cook v. Tex. Dep't of Criminal Justice Transitional Planning Dep't, 37 F.3d 166, 168 (5th Cir. 1994). Therefore, to the extent that Jackson argues that the state may not detain him in the halfway house because his residence there is voluntary and not a condition of his release, the proper vehicle for his challenge is a habeas petition rather than a § 1983 action. The PLRA's three-strikes provision does not bar prisoners from proceeding in forma pauperis in a habeas action, even if the prisoner has accumulated three strikes. Carson v. Johnson, 112 F.3d 818, 820 (5th Cir. 1997) (citing United States v. Cole, 101 F.3d 1076, 1077 (5th Cir. 1996)).

supervisees who are released to the general public.[3]

Jackson moved to proceed in forma pauperis ("IFP") in the district court. The district court determined that Jackson had accumulated three strikes under the Prisoner Litigation Reform Act ("PLRA") and that there was no evidence he was in imminent danger of serious physical injury. Accordingly, pursuant to 28 U.S.C. § 1915(g), the district court denied Jackson's motion to proceed IFP and dismissed his suit. Jackson moved for reconsideration, arguing that since he resides at a halfway house he is not a "prisoner" within the definition of the PLRA; the district court denied this motion as well.

Jackson appealed the district court's dismissal of his action. He also moved to proceed IFP on appeal. The district court denied Jackson's request for leave to proceed IFP on appeal for the same reason it denied his request to proceed IFP in the district court. A prior panel of this court held in abeyance Jackson's request to proceed IFP on appeal because it concluded that his request and his appeal were inextricably intertwined and because it found no controlling authority concerning whether a halfway-house resident is a prisoner under the PLRA.

We now consider Jackson's request to proceed IFP on appeal, which turns on the question whether the PLRA's definition of

---

[3] When the district court dismissed Jackson's claims, it also ordered that his complaint be stricken from the record. Our summary of Jackson's complaint is therefore based on Jackson's statement of the case in his brief.

-4-

"prisoner" encompasses Jackson.

## II. DISCUSSION

Jackson does not dispute that he has had three previous cases dismissed as frivolous——i.e., that he has three strikes under the PLRA.  Instead, he contends that the PLRA's three-strikes provision does not apply to him because he is not a "prisoner" since he has been released from prison on mandatory supervision and now resides in a halfway house.  Contrary to Jackson's argument, we conclude that he is a "prisoner" as that term is defined in the PLRA and that he is thus barred from proceeding IFP.

"We review the district court's interpretation of the PLRA de novo."  Ruiz v. Estelle, 161 F.3d 814, 819 (5th Cir. 1998) (citing Spacek v. Mar. Ass'n, 134 F.3d 283, 288 (5th Cir. 1998)).  "In interpreting a statute, our objective is to give effect to the intent of Congress.  As always, we begin with the language of the statute itself."  Id. (quoting Stiles v. GTE Sw. Inc., 128 F.3d 904, 907 (5th Cir. 1997) (citation omitted)).

The PLRA's three-strikes provision bars prisoners from proceeding IFP in a civil action or in an appeal of a judgment in a civil action if, while incarcerated, the prisoner has had three prior actions or appeals dismissed for being frivolous or malicious or for failure to state a claim, unless the prisoner is in imminent danger of serious physical injury.  28 U.S.C.

§ 1915(g).  The PLRA defines "prisoner" as "any person

incarcerated or detained in any facility who is accused of,

convicted of, sentenced for, or adjudicated delinquent for,

violations of criminal law or the terms and conditions of parole,

probation, pretrial release, or diversionary program."  Id.

§ 1915(h).

Thus, to determine whether Jackson is a "prisoner" within

the meaning of the PLRA, we must answer two questions: (1)

whether Jackson is "incarcerated or detained in any facility" and

(2) if so, whether it is as a result of his criminal conviction.

We first consider whether Jackson is being confined in a

facility.  The Texas Attorney General filed an amicus curiae

brief in which he discusses a number of cases that hold that a

person who has been released from incarceration (e.g., a parolee)

is not confined for PLRA purposes.[4]  For example, in Kerr v.

Puckett, 138 F.3d 321 (7th Cir. 1998), the Seventh Circuit held

---

[4] The Attorney General cites to the following cases: Janes
v. Hernandez, 215 F.3d 541 (5th Cir. 2000); Greig v. Goord, 169
F.3d 165, 167 (2d Cir. 1999) (per curiam); Doe v. Washington
County, 150 F.3d 920 (8th Cir. 1998); and Kerr v. Puckett, 138
F.3d 321 (7th Cir. 1998).

The Attorney General does not take a firm position as to
whether Jackson is a "prisoner."  But he does maintain that even
if Jackson is a "prisoner," he cannot successfully challenge the
conditions of his confinement under 42 U.S.C. § 1997e because he
has been released from confinement.  We do not address this
argument because it is not before us; but we do note that the
Seventh Circuit rejected the Attorney General's position in
Witzke v. Femal, 376 F.3d 744, 753 (2004) (concluding that
halfway house resident is "confined in any jail, prison, or other
corrections facility" under § 1997e).

that a parolee is not a PLRA "prisoner." The <u>Kerr</u> court interpreted the definition of "prisoner" in 42 U.S.C. § 1997e(h), a separate PLRA provision worded exactly the same as § 1915(h). Relying on the text of the statute, the court held that "prisoner" does not encompass parolees: "The statutory language does not leave wriggle room; a convict out on parole is not a 'person incarcerated or detained in any facility who is . . . adjudicated delinquent for[] violations of . . . the terms and conditions of parole.'" <u>Id.</u> at 323.

But in <u>Kerr</u> and in the other cases cited by the Attorney General, it appears that the individual was released from incarceration to the general public. In none of these cases was the prisoner compelled to reside in a halfway house or any other facility after his release from incarceration. By contrast, although Jackson has been released from confinement in prison, his release was not to the general public but was rather to a different form of confinement, albeit with certain additional liberties. It is clear that Jackson is being "detained in any facility" since he is locked up in the halfway house 16 to 24 hours a day and since he may leave the halfway house only for very limited purposes. <u>Cf.</u> <u>Witzke v. Femal</u>, 376 F.3d 744, 752 (7th Cir. 2004) (determining that halfway-house resident who could leave the facility only during the day and was locked inside at night was confined for PLRA purposes).

The more difficult question is whether Jackson's confinement

-7-

at the halfway house is as a result of his criminal conviction. In Ojo v. INS, we held that a detainee of the Immigration and Naturalization Service ("INS") is not a "prisoner" within the PLRA. 106 F.3d 680, 683 (5th Cir. 1997). The detainee in that case entered the United States on a student visa but was later convicted of drug-trafficking crimes and sentenced to a term of imprisonment. Id. at 681. He was released from prison into the custody of the INS, which immediately initiated deportation proceedings. Id. We acknowledged that the detainee had been convicted of and sentenced for a crime and that his criminal violations in a sense caused his INS detention because they gave the INS cause to deport him. Id. at 682. We concluded, however, that this but-for causation was not sufficient. We reasoned that the detainee was not a "prisoner" because his detention was for a violation of immigration law rather than criminal law and because immigration violations were not mentioned in § 1915(h). Id.; accord LaFontant v. INS, 135 F.3d 158, 165 (D.C. Cir. 1998) ("[A]n incarcerated alien facing deportation is not a 'prisoner' for purposes of the PLRA.").

Similarly, other circuits have concluded that individuals in civil confinement are not "prisoners" within the PLRA. For example, the Eighth Circuit has held that a mental patient confined in a state hospital as a result of being found not guilty of a crime by reason of insanity was not a § 1915(h) "prisoner." See Kolocotronis v. Morgan, 247 F.3d 726, 728 (8th

-8-

Cir. 2001).  And the Ninth Circuit has concluded that an individual who was released from prison into civil detention under California's Sexually Violent Predators Act was not a "prisoner."  See Page v. Torrey, 201 F.3d 1136, 1139–40 (9th Cir. 2000).  The Page court held that the PLRA applied only to individuals who "are detained as a result of being accused of, convicted of, or sentenced for criminal offenses."  Id. at 1140.  The court reasoned that the detainee in that case "ceased being a 'prisoner' when he was released from the custody of the Department of Corrections" and that "[h]is current detention [was] not part of the punishment for his criminal conviction but rather a civil commitment for non-punitive purposes."  Id.; accord Troville v. Venz, 303 F.3d 1256, 1260 (11th Cir. 2002) (holding that individual civilly detained as a sexually violent predator is not a § 1915(h) "prisoner" because the PLRA "appl[ies] only to persons incarcerated as punishment for a criminal conviction").

To the extent that Jackson's confinement must be part of "punishment for his criminal conviction," as opposed to confinement "for non-punitive purposes," Page, 201 F.3d at 1140 (emphasis added) in order for him to be a § 1915(h) "prisoner," one could plausibly argue that he is not a "prisoner" because his time in the halfway house is not intended to punish him but rather to provide him housing and to assist him in reintegrating into society.  Jackson was released from the custody of the

-9-

Institutional Division of the Texas Department of Criminal Justice to mandatory supervision under the Pardons and Paroles Division. See TEX. GOV'T CODE ANN. §§ 493.004, 508.001(5). The Pardons and Paroles Division "supervise[s] and reintegrate[s] felons into society after release from confinement." Id. § 493.005. Halfway houses are used to provide a "smoother transition from incarceration to supervised release" to low-risk inmates prior to their being released to parole or mandatory supervision, id. § 508.118, and to "provide housing, supervision, counseling, personal, social, and work adjustment training, and other programs" to releasees who are required to serve a period in a halfway house as a condition of release to parole or mandatory supervision, id. § 508.119.[5]

But we do not believe that the purpose of the confinement—i.e., punishment versus non-punitive purposes—alone is controlling. Rather, § 1915(h) differentiates between "criminal" detainees—i.e., individuals detained pursuant to an accusation or conviction of a violation of a criminal statute, or relatedly a violation of parole or probation—and other detainees. See Ojo, 106 F.3d at 682 (concluding that INS detainee is not § 1915(h) "prisoner" because detention is not for

---

[5] Although § 508.119 refers to "community residential facilities," whereas § 508.118 refers to "halfway houses," both sections refer to facilities that are commonly referred to as "halfway houses." See, e.g., Op. Tex. Att'y Gen. No. GA-0064, at 9 (2003) (citing to both §§ 508.118 and 508.119 as provisions relating to halfway houses).

violation of criminal law).[6]

Even if Jackson's time at the halfway house is for primarily non-punitive purposes, he is nonetheless a "prisoner" within § 1915(h)'s definition because his confinement is as a result of his criminal violation. Jackson resides at the halfway house under the supervision of the Pardons and Paroles Division, which is a division of the Texas Department of <u>Criminal</u> Justice. The Pardons and Paroles Division confines some mandatory supervisees in halfway houses as a component of Texas's overall scheme of imprisoning and reforming felons and then reintegrating them into society. The Division's authority to do so derives from sections of Subtitle G, Title 4 of the Texas Government Code, which is entitled "Corrections." And the maximum term of a mandatory supervisee's confinement in a halfway house is the amount of time remaining on the sentence for his criminal violation. <u>See</u> TEX. GOV'T CODE ANN. § 508.148. Finally, while an inmate is on mandatory supervision, he is "serv[ing] the remainder of [his] sentence," <u>id.</u> § 508.001(5), even though he is no longer in

---

[6] This reading of § 1915(h) is consistent with the holdings of both <u>Page</u> and <u>Troville</u>, which were based primarily on the distinction between criminal confinement and civil detention. <u>See</u> <u>Page</u>, 201 F.3d at 1140 ("California's Sexually Violent Predators Act provides not for criminal sanctions, but for . . . <u>civil</u> commitment . . . ."); <u>Troville</u>, 303 F.3d at 1260 ("A civil detainee simply does not fall under § 1915's definition of 'prisoner[]' . . . .").

prison.[7]

Because Jackson is "detained in any facility" for a criminal conviction, he is a "prisoner" as that term is defined by the PLRA. And since Jackson has accumulated three strikes, he is precluded from proceeding IFP in this case. See § 1915(g).

### III. CONCLUSION

For the foregoing reasons, Jackson's motion to proceed in forma pauperis on appeal is DENIED; APPEAL DISMISSED.

---

[7] The detainee in Troville was confined as a sexually violent predator pursuant to Florida's Jimmy Ryce Act, FLA. STAT. §§ 394.910-394.932. Troville, 303 F.3d at 1258. In contrast to the facts of this case, sexually violent predators in Florida are committed under the terms of that act to the custody of the Department of Children and Family Services (after any period of incarceration for criminal violations is completed). FLA. STAT. § 394.917(2). The provisions permitting involuntary civil commitment of sexually violent predators are part of chapter 394, title 29 of Florida Statutes, which is entitled "Mental Health." And the term of confinement is "until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Id.