[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-15042

_____

LYNCOLN DANGLAR,

Plaintiff-Appellant,

*versus*

STATE OF GEORGIA,
DEPARTMENT OF CORRECTIONS,
GREGORY C. DOZIER,
sued in his offical and individual capacity,
as Commissioner of the State of Georgia
Department of Corrections,
SMITH SP WARDEN,
RONNIE BYNUM,
sued in his official and individual capacity
as Superintendent for Smith Transitional Center, et al.,

Defendants-Appellees.

—————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-03537-ELR

—————————————

Before NEWSOM, BRANCH, and LAGOA, Circuit Judges.

LAGOA, Circuit Judge:

This appeal concerns the district court's *sua sponte* dismissal of Lyncoln Danglar's amended complaint for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A—the early screening provision of the Prison Litigation Reform Act ("PLRA"). The early screening provision of the PLRA states that "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." [1]

---

[1] In conducting this review, "the court is to identify cognizable claims, or dismiss the complaint or portions that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from that relief." *White v. Lemma*, 947 F.3d 1373, 1377 (11th Cir. 2020) (citing 28 U.S.C. § 1915A(b)). "A dismissal for failure to state a claim under the early screening provision is no different from a dismissal under Federal Rule of Civil Procedure 12(b)(6)." *Id.* at 1376–77. Thus, for purposes of this opinion, we accept the allegations in the amended complaint as true and

Danglar makes several arguments.  As a threshold issue on appeal, Danglar contends that the district court erred in designating him a "prisoner" under the PLRA at the time he filed his *pro se* complaint and that the district court further erred in ordering him to pay a filing fee before the district court.[2]

After careful review, and with the benefit of oral argument, we reverse and remand the district court's order.  We hold that the district court erred in applying the PLRA to Danglar's action because Danglar, as a civil detainee in ICE custody, was not a "prisoner" under the PLRA when he filed his action.  Thus, Danglar's complaint must be viewed by the district court in the first instance and outside of the context of the PLRA on remand.  Moreover, as Dangler was not a "prisoner" for purposes of the PLRA at the time that he filed this action, on remand, the district court shall return the filing fees paid by Dangler pursuant to 28 U.S.C. § 1915(b)(1). Regarding Dangler's motion before this Court seeking a return of the appellate filing fees paid pursuant to the PLRA, that motion is granted and the Clerk is directed to refund to Dangler the appellate filing fees paid by him to pursue this appeal.

---

construe them in the light most favorable to Danglar. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022).

[2] After appellate counsel was appointed, counsel filed a motion for a refund of the fees Danglar paid to pursue this appeal based on Danglar's designation as a prisoner under the PLRA.  That motion was carried with the case.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Danglar, a native and citizen of Grenada, became a lawful permanent resident in 2004.  According to the operative pleading before this Court—the amended complaint—Danglar's sentence commenced in July 2015, and he was incarcerated in a Georgia state prison operated by the Georgia Department of Corrections ("GDC").  On July 11, 2017, Georgia state prison officials transferred Dangler to a location to meet with a United States Immigrations and Customs Enforcement ("ICE") agent—J. Sutanto.  Agent Sutanto questioned Dangler about his immigration status and issued him a "Warrant for Arrest of Alien" dated July 11, 2017, which stated that there was probable cause to believe that Dangler "either lacks immigration status or notwithstanding such status is removeable under U.S. immigration law."  After the meeting with Agent Sutanto  concluded, Dangler returned to the Georgia state prison where he was previously being held.  At some point after this date but before July 31, ICE placed an immigration detainer on Danglar and issued a Warrant for Arrest with the charges of removability attached, requesting prison officials to notify ICE before releasing Danglar so that ICE could arrange to take him into its custody.

On July 31, 2017, the GDC granted Danglar parole and he was scheduled to be released from state custody that same day.  Based on the detainer placed on Danglar by ICE, Georgia prison officials anticipated that Danglar would be picked up by ICE immediately and therefore transferred him to a transitional center.  Danglar proceeded to sign release paperwork, but he was not

released pursuant to the detainer. As a result, on July 31, 2017, a prison official at the transitional center moved Danglar to a cell within the transitional center and informed Dangler that he would be released within forty-eight hours if ICE did not arrive and assume custody.

Forty-eight hours passed and ICE failed to arrive to take Danglar into its custody. On August 2, 2017, the transitional center transferred Danglar back to the Georgia state prison despite Dangler's requests to be released. Danglar was only told that he was no longer being held by the State of Georgia but rather that he "was the property of ICE and [was] being held for them."

Danglar remained in segregation at the Georgia state prison until October 24, 2017—almost three months after his release date—when the Department of Homeland Security formally initiated removal proceedings against him and ICE officials assumed custody of Danglar. The length of the detention by Georgia state officials that Dangler claims was unconstitutional was eighty-six days—the number of days between the date he signed his parole release paperwork and the date he was picked up by ICE and taken into its custody.

On August 2, 2019, Danglar, proceeding *pro se* while in ICE custody, brought a 42 U.S.C. § 1983 action against various Georgia officials (collectively, "Defendants"), including the then-

6                    Opinion of the Court                    19-15042

Commissioner of the GDC,[3] alleging violations of his constitutional rights and of Georgia law.[4]  Danglar alleged that his continued detention after his grant of parole, and pursuant to the immigration detainer, was unlawful and extended beyond the forty-eight hours as authorized by 8 C.F.R. § 287.7(d).[5]  Danglar filed this initial complaint from the Etowah County Detention Center in Gadsden, Alabama, where he was detained by ICE.

Finding Danglar's complaint "deficient" for a variety of reasons, the magistrate judge issued an order, advising Danglar to submit an amended complaint that complied with a set of requirements.  As to Danglar's separate request to proceed *in forma pauperis*, the magistrate judge provided Danglar with the requisites

---

[3] Danglar brought the action against: (1) Gregory C. Dozier, the then-Commissioner of GDC; (2) Kenneth Mantle, the then-Director of Offender Administration at GDC; (3) Doug Williams, the then-Warden of Smith State Prison; (4) Ronnie Bynum, the then-Superintendent of Smith Transitional Center; and (5) three other officials at the various GDC facilities where Danglar was held during his detention.

[4] We hold "[a] pro se pleading . . . to a less stringent standard than a pleading drafted by an attorney; a pro se pleading is liberally construed." *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

[5] 8 C.F.R. § 287.7(d) states:

> Upon a determination by the [United States Department of Homeland Security] to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department.

that needed to be satisfied for him to proceed *in forma pauperis*. But the magistrate judge "cautioned" Danglar about proceeding with his action, stating that "even if [Danglar was] allowed to proceed *in forma pauperis*, pursuant to 28 U.S.C. § 1915(b)(1)" of the PLRA, "[Danglar] must nevertheless pay the full amount of the $350.00 filing fee" for his action "from his prisoner account." (emphasis omitted).

On September 11, 2019, Danglar filed his amended complaint, which constitutes the operative complaint for this appeal. In the amended complaint, Danglar alleged that Defendants violated his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, as well as violated Georgia law against unlawful imprisonment, because Defendants detained him beyond his grant of parole and in violation of 8 C.F.R. § 287.7(d).

According to affidavits in support of his complaint, Danglar alleged that he began his GDC incarceration in July 2015. Then, on or about July 11, 2017, state officials transported Danglar to a GDC facility, where he was interviewed by ICE agent J. Sutanto. According to Danglar, Sutanto interrogated him about his immigration status without the presence of legal counsel. After this encounter, Danglar signed his parole release paperwork on July 31, 2017, at another GDC facility—the Smith Transitional Center. But instead of being released on July 31, Danglar was transferred two days later, on August 2, 2017, to yet another GDC facility—the Smith State Prison—pursuant to an immigration detainer issued

against him by ICE and a Memorandum of Understanding between ICE and GDC. According to Danglar, he was then "held in administrative segregation" at Smith State Prison until ICE agents took him into federal custody on October 24, 2017, under the authority of the "ICE detainer and [an] accompanying administrative warrant."

In the amended complaint, Danglar asserted that his prolonged detention by Defendants violated his constitutional rights and Georgia law. In short, Danglar claimed that his continued detention beyond his grant of parole was not supported by probable cause, was without due process, and was in contravention to 8 C.F.R. § 287.7(d). For these reasons, Danglar contended that Defendants violated his Fourth Amendment rights, as incorporated under the Due Process Clause of the Fourteenth Amendment, and Georgia law against unlawful imprisonment. Danglar also asserted that his due process rights under the Fifth Amendment were violated by his continued detention and "illegal arrest." Finally, Danglar made passing references to a violation of his Eighth Amendment rights. Danglar asked the district court for a variety of forms of relief, including declaratory and compensatory relief.

On September 26, 2019, the magistrate judge issued a combined order and final report and recommendation, granting Danglar's request to proceed *in forma pauperis* but recommending that Danglar's 42 U.S.C. § 1983 action be dismissed without prejudice for failure to state a claim under the PLRA's early screening provision—i.e., 28 U.S.C. § 1915A. In granting Danglar's request

to proceed *in forma pauperis*, the magistrate judge applied the provisions of 28 U.S.C. § 1915(b)(2) and ordered Danglar "to pay the full statutory filing fee of $350.00" over a period of time. Next, the magistrate judge turned to the early screening provision of the PLRA without conducting any analysis as to whether Danglar was, in fact, a "prisoner" for purposes of the PLRA. In so doing, the magistrate judge concluded that Danglar failed to state a claim against Defendants because he was "no longer in [D]efendants' custody," given that ICE had taken him into federal custody, and because a separate case that Danglar had brought against *federal* officials had been dismissed under the early screening provision.

Danglar, proceeding *pro se*, filed his objections to the magistrate judge's report and recommendation, arguing that his pleading "met the requirements to state a claim for relief under [42 U.S.C. § 1983]" because Defendants "subjected him to a second detention" after being granted parole and beyond the forty-eight hours as authorized by 8 C.F.R. § 287.7(d). Danglar further argued that the fact that he was in ICE custody did not preclude him from bringing a 42 U.S.C. § 1983 action against Defendants for his continued GDC detention after being granted parole.

The district court subsequently adopted the magistrate judge's report and recommendation and dismissed Danglar's action for failure to state a claim under the early screening provision of the PLRA. *See* 28 U.S.C. § 1915A(b)(1). In addressing Danglar's amended complaint and objections, the district court solely considered Danglar's Fourth Amendment argument, concluding that

Danglar failed to state a claim.  The district court, like the magistrate judge, did not address Danglar's other constitutional and Georgia law claims.  Likewise, the district court also did not substantively parse the timeline of Danglar's GDC detention from his initial grant of parole to his eventual transfer into federal custody to determine if Danglar's detention was unlawful at any point.

On December 13, 2019, Danglar, still proceeding *pro se*, filed his timely notice of appeal.  Then, on July 1, 2020, Danglar filed his *pro se* appellate brief with this Court.  On October 29, 2020, by our own motion, we directed that counsel be appointed to represent Danglar in his appeal.[6]  Subsequently, counsel for Danglar filed a supplemental appellate brief.  Defendants did not file a response brief or participate in this appeal.

## II.    STANDARD OF REVIEW

"Interpretation of the PLRA is a question of law we decide *de novo*."  *Troville v. Venz*, 303 F.3d 1256, 1259 (11th Cir. 2002).  "We review *de novo* a district court's *sua sponte* dismissal for failure to state a claim for relief under 28 U.S.C. § 1915A(b)."  *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017); *accord Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

## III.    ANALYSIS

---

[6] After determining that oral argument was necessary, this Court appointed appellate counsel and authorized counsel to file an initial brief for Dangler. We thank Jonathan H. Silberman for accepting this appointment and for his service to this Court.

As a threshold issue on appeal, Danglar, through his counsel, argues that he cannot be considered a "prisoner" for purposes of the PLRA. He also argues that the district court and the magistrate judge erred in applying provisions of the PLRA to Danglar's action—i.e., *sua sponte* reviewing Danglar's complaint under the early screening provision of the PLRA, 28 U.S.C. § 1915A, and requiring Danglar to pay the full amount of the filing fee under the PLRA, *id.* § 1915(b)(1).

"When construing statutory language, we begin 'where all such inquiries must begin: with the language of the statute itself,' giving 'effect to the plain terms of the statute.'" *United States v. Henco Holding Corp.*, 985 F.3d 1290, 1297 (11th Cir. 2021) (quoting *In re Valone*, 784 F.3d 1398, 1402 (11th Cir. 2015)). Thus, we start with the definition of "prisoner" under the applicable provisions of the PLRA. Under the fee provision of the PLRA, a prisoner bringing a civil action or related appeal is required to pay the filing fees in full. 28 U.S.C. § 1915(b)(1). Both the early screening provision and the fee provision of the PLRA define "prisoner" as: "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, *violations of criminal law* or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c) (defining "prisoner" under § 1915A) (emphasis added); *id.* § 1915(h) (defining "prisoner" under § 1915). In assessing whether the provisions of the PLRA apply to a plaintiff, this Court

looks to the prisoner's "status *at the time he filed his complaint*." *Troville*, 303 F.3d at 1259.

This Court in *Troville* held that the "PLRA's restrictions on actions brought by prisoners do not apply to civilly committed detainees." 303 F.3d at 1260. In *Troville*, a civil detainee filed a complaint regarding his detention in a Florida correctional facility under a Florida law that created a civil commitment procedure for the treatment of sexually violent predators. *Id.* at 1257–58. The civil detainee had not been charged with a crime and was not serving a term of imprisonment for any criminal conviction at the facility; rather, the civil detainee was being held pending a hearing to determine whether he should be involuntarily detained as a sexually violent predator. *Id.* at 1258. We concluded that "the definition of 'prisoner'. . . appl[ied] only to persons incarcerated as punishment for a criminal conviction. . . . A civil detainee simply does not fall under § 1915's definition of 'prisoner,' by which the statute means persons incarcerated for 'violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.'" *Id.* at 1260. "Civil detention by definition is non-punitive" and therefore not criminal, *id.* at 1260.

In so holding, we acknowledged that several circuits to have addressed the issue of civil detention and the PLRA had held the same. *Id.* (collecting cases). We also cited several cases where our sister circuits had determined that an immigration detainee, in particular, is not a "prisoner" under the PLRA. *Id.* (citing *Agyeman v. INS*, 296 F.3d 871 (9th Cir. 2002), *LaFontant v. INS*, 135 F.3d 158

(D.C. Cir. 1998), and *Ojo v. INS,* 106 F.3d 680 (5th Cir. 1997), for the proposition that "an INS detainee is not a 'prisoner' under the PLRA").

Applying the principles articulated in *Troville* to this appeal, we hold that Danglar was not a "prisoner" under the PLRA when he filed his complaint. When Danglar filed his complaint, he had completed his state-law *criminal* detention and was in federal custody at a new facility in Alabama pursuant to an immigration detainer. Dangler was therefore civilly detained because of that immigration detainer. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984). Because he was civilly detained, we conclude that Danglar was not a "prisoner" for purposes of the PLRA, and the district court and the magistrate judge erred in applying the PLRA's early screening provision and fee provision to Danglar's action. *Cf. Shuhaiber v. Ill. Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020) (holding that "a person held only on an immigration detainer is not a 'prisoner' within the meaning of the PLRA"), *cert. denied*, 141 S. Ct. 2475 (2021); *Ojo*, 106 F.3d at 682 (explaining that "[h]ad Congress wished to include immigration violations" within the ambit of the PLRA, Congress could have added them to "the laundry list of other" criminally oriented "things one might violate," as stated in the PLRA's definition of "prisoner"). Thus, both the district court and the magistrate judge erred in applying the PLRA to Danglar's action. We therefore reverse the district court's order and remand for further proceedings consistent with this opinion.

On remand, the district court is directed to evaluate Danglar's complaint in the first instance and outside of the context of the PLRA. The district court also is directed to return the filing fees paid by Danglar below. We also grant Danglar's motion before this Court to refund the filing fees paid pursuing this appeal.

We also note that the district court's order does not provide a meaningful opportunity for appellate review beyond identifying the error in applying the PLRA to Danglar's action. *Cf. United States v. Huff*, 609 F.3d 1240, 1248 (11th Cir. 2010) (explaining that "[t]he district court must explain its findings with sufficient clarity to enable this court to adequately perform its function on appellate review"). Indeed, outside of briefly discussing Danglar's Fourth Amendment claim, the district court did not address any of Danglar's other constitutional or state-law claims. Further, neither the district court nor the magistrate judge attempted to parse the timeline of Danglar's detention after his grant of parole, and in conjunction with 8 C.F.R. § 287.7(d), to determine whether his detention could have violated his rights under the Constitution and Georgia law at any point. On remand, the district court is instructed to consider such issues where appropriate.

## IV.    CONCLUSION

For the reasons stated, we reverse the district court's order and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**