[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11635

Non-Argument Calendar

_____

REGINALD ANDREW PAULK, SR.,

Plaintiff-Appellant,

*versus*

L. BENSON,
D/S ID#13736, Palm Beach County Sheriff's Office,
ZACHARY O'NEIL,
Assistant State Attorney, 15th Judicial Circuit Palm Beach,
NICHOLAS KALEEO,
Assistant State Attorney, 15th Judicial Circuit Palm Beach,
DANIEL O'HEARON,
in individual capacity,
BRIAN LEOFFLER,

in individual capacity, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cv-80126-RAR

_____

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Reginald Paulk, through counsel, appeals the district court's dismissal of his *pro se* amended 42 U.S.C. § 1983 complaint under the screening provisions of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A. On appeal, he argues that the district court erred in concluding that he failed to state a claim for wrongful arrest and that the district court abused its discretion in dismissing his amended complaint without first giving him another opportunity to amend. After review, we affirm.

## I.    Background

In January 2022, Paulk filed a *pro se* civil complaint against various defendants under § 1983 alleging a variety of claims.[1]  Upon review, the district court concluded the complaint constituted an impermissible shotgun pleading and explained that because Paulk was *pro se* he was entitled to an opportunity to amend the complaint.   The district court explained that the amended complaint must comply with both the local rules and the Federal Rules of Civil Procedure, including that the complaint should include a short and plain statement of each claim and should separate out each cause of action or claim for relief.  Thereafter, Paulk filed his *pro se* amended complaint.

As relevant to this appeal,[2] Paulk's complaint alleged that two individuals, Daniel O'Hearon and Brian Leoffler, had stolen Paulk's personal property and boating equipment from Paulk's boat, which was docked in a boat harbor in Florida.  On August 24, 2019, when Paulk and his family were at the boat harbor, they observed the stolen items on Leoffler's boat "in plain view," and a physical confrontation ensued between Paulk and the two men.  Paulk successfully retrieved his property.  According to Paulk, O'Hearon and Leoffler left the marina but then returned two more

---

[1] At the time Paulk filed the complaint, he was incarcerated on charges unrelated to this case.

[2] Paulk asserted various claims against numerous defendants.  However, he appeals only the dismissal of the wrongful arrest claim.  Therefore, this opinion omits discussion of allegations and defendants unrelated to that claim.

times and tried to confront Paulk again. Paulk and his family then left the marina. That same day, however, O'Hearon and Leoffler called the police and, according to Paulk, falsely reported that Paulk had assaulted them while armed. Specifically, O'Hearon reported that Paulk "threatened him with a hand gun [*sic*]" while Leoffler reported that Paulk threatened him "with a 6-foot long pitchfork."

Based on the allegedly false allegations, police arrested Paulk the next day when he and his family were preparing to board their boat. The state charged Paulk with three counts of aggravated assault (later reduced to simple assault) and one count of criminal mischief; a trial ensued and a jury found him not guilty on all counts.[3] According to Paulk's amended complaint, the arresting officer, Deputy Benson, failed to adequately investigate the case, arrested him without explanation, and without taking his statement, and acted with a racially discriminatory motive in arresting him.[4]

Prior to any appearance by the defendants, the district court dismissed the complaint *sua sponte* under the screening provisions of 28 U.S.C. § 1915A. In relevant part, the district court concluded that the substance of Paulk's claims against Deputy Benson

---

[3] The district court took judicial notice of the state court records.

[4] Paulk is black and O'Hearon and Leoffler are white. Paulk did not allege Deputy Benson's race.

constituted a wrongful arrest claim.[5]  However, the district court then concluded that Paulk failed to state a claim on which relief could be granted because Deputy Benson was entitled to qualified immunity as she had arguable probable cause to arrest Paulk based on O'Hearon's and Leoffler's statements.  The district court explained that, even if Paulk was correct that O'Hearon and Leoffler had lied to the police, that fact was irrelevant to the probable cause analysis because there was no suggestion that Deputy Benson knew that their statements were false.  Accordingly, because Deputy Benson had arguable probable cause, the district court concluded that she was entitled to qualified immunity and dismissed the complaint with prejudice.

Paulk timely appealed to this Court, and he moved for leave to proceed *in forma pauperis* and for appointment of counsel in this Court.  A judge of this Court granted Paulk leave to proceed and appointed counsel to represent him on appeal.

## II.　Discussion

Paulk argues that the district court (1) erred in dismissing his wrongful arrest claim for failure to state a claim, and (2) abused its

---

[5] The district court also concluded that Paulk asserted an equal protection claim against Deputy Benson based on his allegations that Deputy Benson acted with a racially discriminatory motive.  The district court denied the equal protection claim because Paulk "fail[ed] to allege that he was treated differently from any other 'similarly situated' person and instead improperly relie[d] upon 'conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent.'"  Paulk does not challenge the denial of this claim on appeal.

discretion in dismissing the amended complaint without first granting him another opportunity to amend on account of his *pro se* status.

Before addressing the merits of Paulk's claims, it is necessary to review the governing principles in this case. Under the PLRA, the district court is required to screen any "civil action in which a prisoner seeks redress from a governmental entity or officer or employee." 28 U.S.C. § 1915A(a). "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted. . . ." *Id.* § 1915A(b). In conducting this review, the court must accept the allegations in the complaint as true and "construe them in the light most favorable to [the plaintiff]." *Danglar v. Dep't of Corr.*, 50 F.4th 54, 55 n.1 (11th Cir. 2022). "If the complaint contains a claim that is facially subject to an affirmative defense, that claim may be dismissed" for failure to state a claim. *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009). The same standards that apply to a dismissal under Federal Rule of Civil Procedure 12(b)(6) apply to dismissals under § 1915A. *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001). "A district court's decision to dismiss for failure to state a claim under 28 U.S.C. § 1915A is reviewed *de novo*[.]" *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). With these principles in mind, we turn to Paulk's claims.

### A. Whether the district court erred in dismissing Paulk's wrongful arrest claim

Paulk argues that the district court erred in concluding that his wrongful arrest allegations were insufficient to state a claim against Deputy Benson. He maintains that under *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004), a wrongful arrest claim under the Fourth Amendment and § 1983 exists where, as here, an officer conducts an investigation in a biased fashion or ignores exculpatory information offered to her.

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim . . . ." *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010); *see also Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990) ("Under the Fourth Amendment, . . . persons have the right not to be arrested without probable cause."). The existence of actual probable cause, or arguable probable cause, however, "at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Gates v. Khokar*, 884 F.3d 1290, 1297–98 (11th Cir. 2018) (quotation omitted). "Whether an officer has probable or arguable probable cause . . . depends on the elements of the alleged crime and the operative fact pattern." *Id.* at 1298 (quotation omitted).

"To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable

cause." *District of Columbia v. Wesby*, 583 U.S. 48, 56–57 (2018) (quotations omitted); *see also Carter*, 821 F.3d at 1319 ("We assess probable cased based on the totality of the circumstances." (quotations omitted)). Of course, "[b]ecause probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 516 (11th Cir. 2019) (quotations omitted)). Indeed, it "requires only a probability or a substantial chance of criminal activity, not an actual showing of such activity." *Wesby*, 583 U.S. at 57 (quotations omitted). Far from an exacting standard, probable cause is "not a high bar." *Id.*; *see also Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019) (explaining that probable cause "does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed, *or* even a finding made by a preponderance of the evidence").

Arguable probable cause exists when a reasonable officer "in the same circumstances and possessing the same knowledge as the defendant could have believed that probable cause existed to arrest." *Gates*, 884 F.3d at 1298 (alteration adopted) (quotation omitted). "The concept of arguable probable cause therefore allows for the possibility that an officer might reasonably but mistakenly conclude that probable cause is present." *Id.* (quotations omitted). "In determining whether arguable probable cause exists, [w]e apply an objective standard, asking whether the officer's actions [were] objectively reasonable . . . regardless of the

officer's underlying intent or motivation." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002).

Here, the gravamen of Paulk's argument is that his allegations established that Deputy Benson lacked even arguable probable cause because she conducted an inadequate investigation before arresting him. He maintains that she relied solely on the allegedly false statements of O'Hearon and Leoffler and she acted unreasonably under *Kingsland* in not obtaining Paulk's side of the story prior to arresting him. We disagree.

We recognized in *Kingsland* that "officers are not required to perform error-free investigations or independently investigate every proffered claim of innocence." 382 F.3d at 1229 n.10. The plaintiff in *Kingsland*, however, alleged that the officers not only "turned a blind eye to immediately available exculpatory information" but essentially fabricated evidence in an effort to "exonerate" one of their fellow officers. *Id.* Specifically, the evidence indicated that, upon responding to the scene of an auto accident, Kingsland indicated that she was injured, but officers ignored her; officers spoke to the other party involved in the accident (who happened to be a fellow police officer), but no officer took Kingsland's statement or spoke to any witnesses on scene, yet in the arrest report, officers stated that Kingsland had run a red light and was at fault for the accident; officers claimed to smell a marijuana odor coming from Kingsland's vehicle, but never searched the vehicle or called in a canine unit, despite Kingsland's assertions that she did not do drugs and no drugs were ever

produced; officers administered field sobriety tests on Kingsland, despite her continued protestations that she was injured, felt dizzy and sick, and needed to go to the hospital; and when she failed the field sobriety tests, officers arrested her and charged her with driving under the influence of alcohol, but when the Breathalyzer tests came back negative, another officer told the first officer to charge Kingsland with driving under the influence of cannabis (but a drug test later came back negative). *Id.* at 1223–27. Thus, we concluded that summary judgment in favor of the officers was inappropriate because "a reasonable jury could find that the [officers'] investigation was deficient in that the officers consciously and deliberately did not make an effort to uncover reasonably discoverable, material information." *Id.* at 1230.

We have cautioned that *Kingsland* did not "establish[] that every failure by an officer to discover 'easily discoverable facts' violates the Fourth Amendment." *Washington v. Rivera*, 939 F.3d 1239, 1248 (11th Cir. 2019). Rather, the significant point in *Kingsland* was the jarring fact that a jury could have found that the officers fabricated evidence against the plaintiff. *Id.*; *see also Huebner v. Bradshaw*, 935 F.3d 1183, 1189–90 (11th Cir. 2019) (distinguishing *Kingsland* and emphasizing that in *Kingsland* the arresting officers not only failed to follow up and ignored exculpatory evidence but affirmatively misrepresented their intentions and may well have manufactured evidence to justify the arrest).

There are stark differences between this case and *Kingsland*. Here, taking as true Paulk's allegations that O'Hearon and Leoffler

were lying, Paulk does not allege that Deputy Benson knew that they were lying or that Deputy Benson fabricated evidence against him. Rather, he merely faults Deputy Benson from arresting him without first obtaining his side of the story. But we have never held that in order to have probable cause, much less arguable probable cause, an officer must first interview a defendant before effectuating an arrest. To the contrary, it is entirely reasonable for an officer to rely on the statements of the purported victims when determining whether he has probable cause to arrest. *See Lee*, 284 F.3d at 1195 ("Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors."). To be clear, "[p]olice officers are not expected to be lawyers or prosecutors," and they are not required to resolve conflicting stories before effectuating an arrest. *Huebner*, 935 F.3d at 1188 (explaining that an arresting officer is not "required to sift through conflicting evidence or resolve issues of credibility" before making an arrest).

Given the totality of the circumstances in this case viewed in the light most favorable to Paulk, arguable probable cause existed to arrest Paulk for aggravated assault with a deadly weapon. Faced with O'Hearon and Leoffler's statements, a reasonable officer in the same circumstances and possessing the same knowledge as Deputy Benson had reason to believe that Paulk was involved in a confrontation with O'Hearon and Leoffler and that he threatened them with a deadly weapon during the

confrontation.  *Gates*, 884 F.3d at 1298.  Thus, a reasonable officer possessing this information could have believed that probable cause existed to arrest Paulk for aggravated assault under Florida law.[6]  *Id.*  Because the existence of arguable probable cause defeats Paulk's wrongful arrest claim, *id.*, the district court did not err in *sua sponte* dismissing the claim for failure to state a claim on which relief could be granted under § 1915A.

> B. *Whether the district court abused its discretion in dismissing the amended complaint without giving Paulk an additional opportunity to amend*

Paulk argues that because he was *pro se* and he had attempted to correct the deficiencies in his initial complaint by filing the amended complaint, the district court should have afforded him an additional opportunity to amend the complaint before dismissing it.  He maintains that had he received the

---

6  In Florida, an aggravated assault with a deadly weapon has four elements:

> (1) the defendant intentionally and unlawfully threatened, either by word or act, to do violence to the victim, (2) at the time, the defendant appeared to have the ability to carry out the threat, (3) the act of the defendant created in the mind of the victim a well-founded fear that violence was about to take place, and (4) the assault was with a deadly weapon.

*Howard v. State*, 245 So. 3d 962, 963 (Fla. 1st DCA 2018); *accord* Fla. Stat. § 784.021(1)(a) (defining aggravated assault as simple assault with a deadly weapon without the intent to kill).  "A deadly weapon is defined as an instrument that will likely cause death or great bodily harm when used in the ordinary and usual manner contemplated by its design." *Brown v. State*, 86 So. 3d 569, 571 (Fla. 5th DCA 2012).

opportunity to amend, it is possible that he could have included additional allegations that would have supported the existence of a wrongful arrest claim against Deputy Benson, such as "what Deputy Benson knew before the arrest, the lack of any interaction with him prior to arrest, the existence and reactions of other eyewitnesses present at the public place of the supposed assault, and the availability of still other witnesses at the scene of his arrest who might have provided details about the supposed assault."

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (quotations omitted). Generally, where a more carefully drafted complaint might state a claim, the district court abuses its discretion if it does not provide a *pro se* plaintiff at least one opportunity to amend before the court dismisses with prejudice. *See Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291–92 (11th Cir. 2018); *see also Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (same), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 543 & n.1 (11th Cir. 2002) (en banc). This rule applies even when the plaintiff does not seek leave to amend the complaint in the district court. *Bank*, 92 F.2d at 1112. A district court need not grant leave to amend however, if the plaintiff clearly indicates that he does not want to amend or if amendment would be futile because a more carefully crafted complaint would still not be able to state a claim. *See Woldeab*, 885 F.3d at 1291.

Here, as required, the district court afforded Paulk one opportunity to amend his complaint.  Once Paulk filed his amended complaint, nothing compelled the district court to continue to offer Paulk opportunities to further amend his complaint.  *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1358–59 (11th Cir. 2018) (explaining that where the plaintiff is provided fair notice of the specific defects in his complaint and a meaningful chance to fix it but fails to correct the defects, the district court does not abuse its discretion by subsequently dismissing with prejudice on shotgun pleading grounds). Paulk's speculative assertion on appeal that, if given a second opportunity to amend, he "may" have been able to include additional allegations related to the wrongful arrest claim does not establish that the district court abused its discretion in dismissing the complaint without affording him a second opportunity to amend.  Moreover, it is clear that any further amendment would have been futile. Even assuming that Paulk included additional allegations about eyewitnesses to the confrontation and Deputy Benson's lack of interaction with Paulk prior to his arrest, as discussed above, Deputy Benson was not required to sift through the evidence or resolve conflicting accounts of the incident before arresting Paulk.  *See Huebner*, 935 F.3d at 1188; *Lee*, 284 F.3d at 1195.  Rather, arguable probable cause existed to arrest Paulk based on the statements of O'Hearon and Leoffler.

### III.    Conclusion

For the above reasons, we affirm the district court.

**AFFIRMED.**